USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

JULIA PENAFIEL, NANCY MONTERO, and
MODESTA RAMOS, *individually and on behalf
of others similarly situated,*

                                        Plaintiffs,

                    -v-

RINCON ECUATORIANO, INC. d/b/a RINCON
ECUATORIANO and CARLOS ALONZO,

                                        Defendants.

------------------------------------------------------------------X

15 Civ. 112 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On November 2, 2015, the parties submitted an application for approval of a proposed

settlement agreement in this Fair Labor Standards Act ("FLSA") action. Dkt. 24. The

application contained a joint letter, *id.* ("Letter"); the settlement agreement, *id.*, Ex. A

("Agreement"); and plaintiffs' counsel's billing records, *id.*, Ex. B ("Invoice"). The parties ask

the Court to approve the with-prejudice settlement and dismissal of this case pursuant to *Cheeks*

*v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015), and to approve the requested attorneys'

fees for plaintiffs' counsel. For the following reasons, the Court approves the settlement, but

reduces the amount of the fee award from that proposed.

## I.      Background

Plaintiffs brought minimum-wage, overtime, and other claims against defendants arising

from their employment at a Bronx restaurant owned and operated by the corporate defendant,

whose principal is defendant Carlos Alonzo. *See* Letter at 1–2.

Under the Agreement, defendants are to pay a sum of $35,000 within 10 days of the

Court's approval of the settlement and agree to enter a judgment on consent in the amount of

$250,000.  Agreement ¶ 1.  Of the total settlement amount, $21,000 (60%) would be distributed

to the three named plaintiffs, in proportion to the maximum damages each could have recovered

at trial.  Letter at 2.  The remaining $14,000 (40% of the total settlement) would go to plaintiffs'

attorneys at Michael Faillace & Associates, P.C. as attorneys' fees, pursuant to the retainer

agreements executed by plaintiffs.[1]  *Id.*  In exchange, plaintiffs would release defendants from all

liability for claims "relating to their employment with Defendants and regarding events that have

occurred as of the Effective Date of this Agreement."  Agreement ¶ 4.

## II.      Discussion

### 1.         Approval of Settlement Agreement

Under the FLSA, any employer that violates the requirement to pay minimum or

overtime wages "shall be liable to the . . . employees affected in the amount of their unpaid

minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount

as liquidated damages."  29 U.S.C. § 216(b).  Parties cannot privately settle FLSA claims with

prejudice absent the approval of the district court or the Department of Labor.  *See Cheeks*, 796

F.3d at 200.  Rather, the parties must satisfy the Court that their agreement is "fair and

reasonable."  *Velasquez v. SAFI-G, Inc.*, No. 15 Civ. 3068 (WHP), 2015 WL 5915843, at *1

(S.D.N.Y. Oct. 7, 2015).  "In determining whether the proposed settlement is fair and reasonable,

a court should consider the totality of circumstances, including but not limited to the following

---

[1] The joint letter states that plaintiffs' counsel waives the costs and expenses that plaintiffs would otherwise be responsible for under the retainer agreements.  Letter at 2 n.1.  However, it also represents that $550 of the requested $14,000 "represents costs actually incurred by counsel in litigating this action."  *Id.* at 3.

factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).  Furthermore, "factors that weigh against approving a settlement also include the following: (1) 'the presence of other employees situated similarly to the claimant'; (2) 'a likelihood that the claimant's circumstance will recur'; (3) 'a history of FLSA non-compliance by the same employer or others in the same industry or geographic region'; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'" *Id.* at 336 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

None of the four factors that weigh against FLSA settlement approval appear to be present here.  No other employee has come forward; therefore, only the named plaintiffs would be affected by dismissal.  Letter at 3.  And there appears to be no practical likelihood of recurrence, as defendants' restaurant closed in November 2014.  *Id.*  And because the plaintiffs no longer work for defendants, the Court has little concern that defendants used improper leverage to secure the settlement.  *See Cisneros v. Schnipper Rest. LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion "not as relevant when the plaintiffs no longer work for the defendant").

To be sure, as the parties recognize, the $21,000 net recovery that plaintiffs would collect under the proposed settlement represents "only a small portion of the minimum and overtime wages that they could have recovered if they were successful at trial," Letter at 3, which the parties estimate at $522,389.30 (including liquidated damages). *Id.* at 2.  Nevertheless, the parties argue that the Agreement is fair to plaintiffs because (1) they were represented by counsel, (2) they made "an informed decision to settle the action after completing discovery," and (3) there were "significant concerns over the collectability of any judgment Plaintiffs could have obtained post trial." *Id.* at 3.

While the Court is mindful that plaintiffs' recovery will be a tiny fraction of their potential recovery at trial, the range of possible recovery is only one factor relevant to settlement approval.  The others strongly favor approval.  First, the Agreement resulted from arm's-length negotiations at which plaintiffs were represented by competent, experienced counsel.  Second, these negotiations concluded after discovery and indeed less than a month before trial was to commence, meaning that counsel and the parties were well-positioned to value the case and weigh their options.  Third, plaintiffs have serious concerns about collectability, which "militates in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).  And, in the event that additional assets unexpectedly come to light, the consent judgment in the amount of $250,000 provides a route for plaintiffs to recover more.  Fourth, the joint letter reveals that neither party was able to produce records reflecting either the wages plaintiffs earned or the hours they worked, *see* Letter at 2 ("No records reflecting Plaintiff's [sic] wages or hours were produced."), which suggests that plaintiffs, as the parties bearing the burden of proof, may have found it difficult to establish the full scope of their claims.

Therefore, considering the totality of the circumstances, the Court finds the proposed settlement agreement fair and reasonable.

### 2.        Approval of Attorneys' Fees

The parties also seek $14,000 in attorneys' fees and/or costs for plaintiffs' counsel.

As an initial matter, plaintiffs make conflicting statements about what the $14,000 figure represents, stating that (a) plaintiffs' counsel waives the costs and expenses, Letter at 2 n.1, but alternatively that (b) the $14,000 figure includes $550 for costs incurred, *id.* at 3.  The Court will consider the costs waived.  Thus, the Court understands the parties to be requesting $14,000 as attorneys' fees—and fees alone—for plaintiffs' counsel.  This sum represents 40% of the total settlement amount.

Despite the apparent agreement by plaintiffs to pay 40% of the total settlement as attorneys' fees, *see id.* at 2, the Court must independently ascertain the reasonableness of the requested fees.  *See* 29 U.S.C § 216(b) (allowing "a *reasonable* attorney's fee") (emphasis added).  In determining a reasonable fee, courts in this Circuit look to counsel's lodestar—the reasonable hourly rate multiplied by the reasonable number of hours worked.  *Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *2 (S.D.N.Y. Aug. 31, 2015).  Plaintiffs' counsel represents that its lodestar is $18,225, Letter at 3, but the Invoice reflects that this figure inappropriately includes $550 in costs.  Invoice at 3.

Even after accordingly reducing the lodestar to $17,675, the Court still finds this lodestar unreasonably high.  Most significantly, more than 60% of the work on this case (27.7 out of 44.8 hours) was done by Raquel A. Gutiérrez, a 2011 law school graduate who has been working on wage-and-hour cases only since February 2015 (after this case commenced), but who nevertheless bills at a rate of $375 per hour.  *See* Letter at 4.  As this Court recently recognized,

*partners* in wage-and-hour cases bill in the range of $300 to $400 per hour. *See Zhang*, 2015 WL 5122530, at *3. In that case, the Court found that the appropriate rate for inexperienced associates was $175 per hour, *id.*, and so finds here. After adjusting Ms. Gutiérrez's rate accordingly, the lodestar falls to $12,135. Thus, even if the Court found all of the other rates charged and hours worked reasonable (which the Court does not decide either way), the proposed fee award would reflect a multiplier of about 1.15 above the lodestar.

The excessiveness of the proposed fee award is amplified by the fact that it constitutes 40% of the total settlement. "Except in extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount." *Zhang*, 2015 WL 5122530, at *4; *see also Cisneros*, 2014 WL 67235, at *2 ("[J]udicially approved fees in this Circuit typically range between 30% and 33⅓%."). This case is not at all extraordinary.

Therefore, the Court grants plaintiffs' counsel a fee award of one-third of the total settlement, *i.e.*, $11,666.67. The balance, or $23,333.33, is to go to the three plaintiffs, in proportion to the maximum damages each could have received at trial.

For the same reasons, the Court directs the parties to modify the proposed consent judgment so that it reflects attorneys' fees and costs totaling $83,333.33 (one-third of $250,000), rather than $100,000, with the balance distributed proportionally among the three named plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court approves the $35,000 settlement. Plaintiffs' counsel is to receive $11,666.67 of the settlement amount, and the balance is to go to plaintiffs in proportion to the damages they could have recovered at trial. As the terms of the Agreement provide that no funds may be distributed until the Court so-orders a stipulation of dismissal and

the consent judgment, *see* Agreement ¶ 2(a), the Court directs plaintiffs to provide those documents (with the consent judgment modified as directed) within 10 days of receipt of payment from the defendants into plaintiffs' counsel's escrow account.


SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge


Dated: November 30, 2015
        New York, New York